# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MIQUEL D. BROWN,<br><br>                    Plaintiff,<br><br>v.<br><br>CAPTAIN JEREMY WILTZIUS, LT. MARK PUTERBAUGH, and C.O. DENICE DOYING,<br><br>                    Defendants. | Case No. 24-CV-915-JPS<br><br><br>**ORDER** |

       Plaintiff Miquel D. Brown, an inmate confined at Kettle Moraine Correctional Institution ("KMCI") filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Jeremy Wiltzius ("Wiltzius") violated his constitutional rights. ECF No. 1. On October 23, 2024, the Court screened Plaintiff's complaint, found that it failed to state a claim, and allowed Plaintiff the opportunity to file an amended complaint. ECF No. 7. On November 12, 2024, Plaintiff filed an amended complaint, ECF No. 8 and a motion to pay the whole filing fee from his release account, ECF No. 9. This Order resolves Plaintiff's motion to pay the remainder of the filing fee from his release account and screens his amended complaint.

## 1.    MOTION FOR LEAVE TO PAY FILING FEE FROM RELEASE ACCOUNT

       The Court will deny Plaintiff's motion for an order to use his inmate release account to pay the filing fee in full. This Court has the authority to order disbursements from a prisoner's release account for payment of an initial partial filing fee ("IPFF"). *See, e.g., Doty v. Doyle*, 182 F. Supp. 2d 750,

751 (E.D. Wis. 2002) (noting that "both the Wisconsin Prison Litigation Reform Act…and the federal Prison Litigation Reform Act [("PLRA")]…authorize the courts to order that…a prisoner's release account be made available [to pay an IPFF]"). However, this Court lacks the authority—statutory or otherwise—to order that a prisoner may tap into his release account to pay current (or future) litigation costs. *Cf. Wilson v. Anderson*, No. 14-CV-0798, 2014 WL 3671878, at \*3 (E.D. Wis. July 23, 2014) (declining to order that a prisoner's full filing fee be paid from his release account, "[g]iven the [DOC's] rationale for segregating funds into a release account" and the absence of any statutory authority compelling the court to do so).

Permitting a prisoner to invade a release account for litigation costs could harm that prisoner's likelihood of success post-incarceration, *see* Wis. Admin. Code § DOC 309.466 (stating that disbursements from a prisoner's release account are authorized "for purposes that will aid the inmate's reintegration into the community"), especially if the prisoner is particularly litigious. As the Seventh Circuit has instructed, "like any other civil litigant, [a prisoner] must decide which of [his] legal actions is important enough to fund," *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003); thus, if a prisoner concludes that "the limitations on his funds prevent him from prosecuting [a] case with the full vigor he wishes to prosecute it, he is free to choose to dismiss it voluntarily and bring it at a later date." *Williams v. Berge*, No. 02-CV-10, 2002 WL 32350026, at \*8 (W.D. Wis. Apr. 30, 2002).

Here, Plaintiff offers no explanation for his need to pay the remainder of the filing fee from this release account. As such, the Court is obliged to deny Plaintiff's motion.

## 2. SCREENING THE AMENDED COMPLAINT

### 2.1 Federal Screening Standard

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether a complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints

liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff brings his amended complaint against Defendants Wiltzius, Lt. Mark Puterbaugh ("Puterbaugh"), and C.O. Denise Doying ("Doying"). ECF No. 8 at 1. On February 28, 2024, Wiltzius called Plaintiff to the mail room to address inconsistencies in the address on his legal mail. ECF No. 8 at 2. Wiltzius told Plaintiff that his legal mail tested positive for synthetics cannabinoids. *Id.* As a result, Wiltzius placed Plaintiff in temporary lock up ("TLU"). *Id.* While in TLU, Wiltzius attempted to ask Plaintiff questions; Plaintiff refused to answer the questions and responded to Wiltzius in an angry/disrespectful tone. *Id.*

Wiltzius then retaliated against Plaintiff by filing a bogus conduct report on Plaintiff. *Id.* Wiltzius manufactured and fabricated evidence against Plaintiff by lying about the dates and times that he called Plaintiff to the mail room and alleging that he opened Plaintiff's legal mail in front of him. *Id.* Wiltzius provided that the incident in the mailroom occurred on February 27, 2024, and that he opened up Plaintiff's legal mail in his presence. *Id.* at 3. Wiltzius lied so that he could try to cover up the fact that he opened up legal mail outside of Plaintiff's presence, in violation of institutional policy and the constitution. *Id.* Wiltzius opened Plaintiff's private legal mail from a law firm that contained a supervisory writ. *Id.* at 1. This document gave insight into Plaintiff's legal defense and arguments. *Id.*

Wiltzius further retaliated against Plaintiff by lying that the mail tested positive for synthetics. *Id.* at 3. This was a lie because the test results

showed only that a possible substance was detected. *Id.* Wiltzius knew that the test he used often yields a false positive and is less accurate than a definitive test, which is required to confirm the presence of drugs. *Id.* Plaintiff received ninety days disciplinary separation for a violation of DOC 303.43 – Possession of Intoxicants. *Id.* Wiltzius also manufactured evidence against Plaintiff by saying that he violated DOC 303.36(A) – Enterprise Fraud – and DOC 303.49 – Unauthorized Use of Mail. *Id.* at 3–4. Puterbaugh and Doying conducted Plaintiff's disciplinary hearing. *Id.* at. 2. Puterbaugh was not impartial because he was subordinate to Wiltzius. *Id.* The decision at the disciplinary hearing was not supported by any evidence. *Id.*

**2.3    Analysis**

First, the Court finds that Plaintiff may proceed on an access to courts claim against Wiltzius for opening his "legal mail" outside his presence. The Seventh Circuit has clarified that not all legal mail is entitled to the same level of confidentiality. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 803–04 (7th Cir. 2010); *see also Sovereignty Joeseph Helmueller Sovereign Freeman v. Wilson*, No. 23-1962, 2023 WL 8274582, at *1 (7th Cir. Nov. 30, 2023) (distinguishing between legal mail from a prisoner's lawyer and public or nonconfidential documents of a legal nature.) A prisoner suffers no constitutional harm when public documents that "prison officials have as much right to read as the prisoner" or "routine and nonsensitive" nonpublic documents are opened outside the prisoner's presence. *Guajardo-Palma*, 622 F.3d at 804–06 (holding that "as long as the prison confines itself to opening letters that either are public or if private still are not of a nature that would give the reader insights into the prisoner's legal strategy, the practice is harmless and may be justified by the volume of such mail that a litigious prisoner can generate").

Here, Plaintiff alleges that Wiltzius opened his legal mail outside Plaintiff's presence. Plaintiff provides that his legal mail was confidential because it was from a private law firm and contained insight into his legal defense. The Court notes that it is unclear if the "supervisory writ" sent to Plaintiff was in draft form or if it was a publicly filed document. At the screening stage, however, the Court takes Plaintiff's allegation as true that the legal mail was indeed private. As such, Plaintiff may proceed on an access to court claim against Wiltzius for opening Plaintiff's legal mail.

Second, the Court finds that Plaintiff may proceed on a Fourteenth Amendment claim for a deprivation of liberty without due process against Puterbaugh and Doying. A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)).

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life.'" *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.* Disciplinary segregation can trigger due process protections. *Marion v. Columbia Correctional Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (citations omitted). When making the determination whether an inmate is entitled to such protections, courts analyze "the combined import of the duration of

the segregative confinement and the conditions endured by the prisoner during that period." *Id.* If conditions in segregation are significantly harsher than those in the normal prison environment, then a liberty interest may arise even when the duration of the segregation, standing alone, would not trigger such an interest. *Id.* at 697–98. On the one hand, "six months of segregation is 'not such an extreme term' and, standing alone, would not trigger due process rights." *Id.* at 698 (quoting *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)). On the other end of the spectrum, transfer to a maximum-security prison and placement in segregated confinement for an indefinite duration where virtually all sensory and environmental stimuli are denied, little human contact is permitted, and prisoners otherwise eligible for parole are disqualified from parole eligibility, taken together, impose an atypical and significant hardship within the correctional context. *Id.* at 697 (citing *Wilkinson v. Austin*, 549 U.S. 209, 224 (2005)).

Once a liberty or property interest has been invoked, the Court looks to what process was due. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). Not only must the requirements of *Wolff* be satisfied, but the decision of the disciplinary hearing board must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Page 7 of 11
Case 2:24-cv-00915-JPS      Filed 01/28/25      Page 7 of 11      Document 10

Here, Plaintiff alleges that he received ninety days in disciplinary segregation where the conditions were significantly harsher than in the normal prison environment. Plaintiff alleges conditions of being locked up twenty-four hours per day, toilets that did not properly function, and being housed with a cellmate in a space that was only big enough for one person. Plaintiff further alleges that he did not receive due process at his disciplinary hearing because Puterbaugh was not an impartial decision maker and because no evidence supported Puterbaugh and Doying's decision. Again, at the pleading stage and taking Plaintiff's allegations as true, the Court finds that Plaintiff may proceed against Puterbaugh and Doying on a Fourteenth Amendment claim for a deprivation of liberty without due process.

Finally, the Court finds that Plaintiff may not proceed on a First Amendment retaliation claim. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). The Seventh Circuit has instructed that the proper question in determining whether speech is protected is whether the prisoner "'engaged in [the] speech in a manner consistent with legitimate penological interests.'" *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Watkins v. Kasper*, 599 F.3d 791, 796 (7th Cir. 2010). The Seventh Circuit has found that speech is not protected where it is disruptive, confrontational, or something that violates prison disciplinary policies such as "back talk." *Id.* (quotations omitted).

Here, Plaintiff generally alleges that Wiltzius's actions were all done in retaliation to Plaintiff. However, it is not clear to the Court what the alleged protected activity is in this instance. Plaintiff admits that he initially responded to Wiltzius's inquiry about the mail in an angry and disrespectful tone. As such, Plaintiff's allegations as currently pled do not suggest that he had engaged in protected speech so as to invoke the First Amendment.

3. **CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Access to court claim against Wiltzius for opening Plaintiff's confidential legal mail.

**Claim Two:** Fourteenth Amendment claim against Puterbaugh and Doying for depriving Plaintiff of his liberty without due process.

Defendants should take note that, within forty-five (45) days of service of this Order, they are to file a summary judgment motion that raises all exhaustion-related challenges. The Court will issue a scheduling order at a later date that embodies other relevant deadlines.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to pay the remainder of the filing fee from his release account, ECF No. 9, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that under an informal service agreement between the Wisconsin Department of Justice and this Court, a copy of the amended complaint and this Order have been electronically transmitted to the Wisconsin Department of Justice for service on Defendants **Wiltzius, Puterbaugh, and Doying**;

**IT IS FURTHER ORDERED** that under the informal service agreement, those Defendants shall file a responsive pleading to the amended complaint within sixty (60) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges by filing a motion for summary judgment within forty-five (45) days of service;

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the amended complaint, and Plaintiff should strongly consider filing a second amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 28th day of January, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.