# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MIQUEL D. BROWN,**

    **Plaintiff,**

  v.                                **Case No. 24-cv-915**

**JEREMY WILTZIUS,** *et al.*,

    **Defendants.**

---

## ORDER

---

Plaintiff Miquel D. Brown, who is incarcerated and is representing himself, brings this lawsuit under 42 U.S.C. § 1983. Brown was allowed to proceed on an access to courts claim against defendant Jeremy Wiltzius for allegedly opening Brown's legal mail outside of Brown's presence. He was also allowed to proceed on a claim pursuant to the Fourteenth Amendment against defendants Lt. Mark Puterbaugh and CO Denice Doying for allegedly depriving Brown his due process rights by conducting a biased disciplinary hearing. The defendants filed a motion for summary judgment. (ECF No. 32.) The motion is ready for a decision. For the reasons stated below, the court grants the defendants' motion for summary judgment.

## FACTS

The defendants assert that on the morning of February 27, 2024, Wiltzius was informed by mail room staff at Kettle Moraine Correctional Institution (KMCI) that

there were issues with an envelope addressed to Brown. (ECF No. 34, ¶ 5.) The envelope appeared to be legal mail sent through the United States Postal Service and the return address was "Fox Law LLC, 218 State Street, Petoskey, MI 49770." (*Id.*, ¶¶ 6-7.) Because it was a law firm from Michigan, Wiltzius sought to confirm its legitimacy. (*Id.*, ¶ 8.) A search uncovered that there was no evidence of a Fox Law, LLC, in Petosky, Michigan, and that the address was actually a residential address that was not associated with any business. *(Id.)* Wiltzius asserts that he "contacted the residents of 218 State Street in Petosky, and they stated they had no knowledge of a Fox Law, LLC." (*Id.*) Brown asserts that Wiltzius has provided no evidence "other than his own words" that the address was for a fake law firm. (ECF No. 44 at 1-2.)

Wiltzius states that because the mail seemed suspicious, he had Brown come down to the mail room to discuss the issues. (ECF No. 34, ¶ 9.) According to Wiltzius, he asked Brown if he was expecting legal mail from Fox Law, LLC. (*Id.*, ¶ 10.) Brown stated he was, so Wiltzius "opened the envelope in front of Brown and found what appeared to be a legal brief." (*Id.*) Typically, legal mail contains a cover letter from the lawyer explaining the contents, and Wiltzius noticed that Brown's mail was lacking this letter. (*Id.*) Wiltzius then tested the mail using a "DetectaChem MobileDetect pouch", which "yielded a positive result for the presence of synthetic cannabinoids." (*Id.*, ¶ 11.) As a result, Wiltzius had Brown placed in Temporary Lock Up (TLU) while he investigated the situation. (*Id.*, ¶ 12.)

Brown states that Wiltzius did not call him down to the mail room on February 27, but instead he called him down there on February 28. (ECF No. 44 at 2.) When he arrived at the mail room, Wiltzius had already opened and tested his legal mail. (*Id.* at 3.) Brown asserts that the contents of the mail "was a draft of a supervisory writ . . . and was not publicly filed." (ECF No. 46 at 1.) He also notes that Wiltzius destroyed the contents without retaining a copy for Brown, which impacted pending litigation. (*Id.* at 2.)

Sometime later, it is unclear from the record when, Wiltzius had a follow-up conversation with Brown about the mail. (ECF No. 34, ¶ 13.) Wiltzius states he asked Brown about Fox Law, LLC, and Brown "responded that his girlfriend, Tami Knudsen, had a co-worker she was friends with who worked as a paralegal. Brown stated that this friend would assist with his legal case, including mailing him paperwork." (*Id.*, ¶ 14.)

Brown asserts that he refused to talk to Wiltzius during this interview and gave him no information. (ECF No. 44 at 4.) In fact, when he was questioned about Knudsen's paralegal friend during his disciplinary hearing, Brown responded that he did not know from where Wiltzius got that idea about the paralegal. (*Id.*) Instead, he states that he told Knudsen that he needed her to send him his legal paperwork "under a law firm as legal" so it would not be subject to the Wisconsin Department of Corrections' screening procedure for non-legal mail. (*Id.*; ECF No. 46 at 6.) Specifically, Brown asserts that he would send Knudsen legal briefs to "make all corrections" which she would then send back to Brown to review. (ECF No. 46 at 6.)

3

It is undisputed that after the interview, Brown's cell was searched, and during the search "[s]everal additional envelopes were recovered" and "[m]any of these envelopes had the same return address of Fox Law on State Street. However, none of these confiscated envelopes contained cover letters or provided contact information for Fox Law, LLC." (ECF No. 34, ¶¶ 16-17.) Also, during the search another envelope was uncovered that had a return address of "Harris Law, LLC 218 Howard Street, Petosky, MI 49770." (*Id.*, ¶ 18.) Wiltzius investigated this address and discovered that no such law firm existed. (*Id.*, ¶ 19.)

As a result of his investigation, Wiltzius believed that the mail was an attempt by Brown to introduce illegal drugs into KMCI to distribute for profit. (ECF No. 34, ¶ 22.) Wiltzius had previously investigated an issue with Brown where he discovered that Brown had been using the CashApp with Knudsen to transfer money between other KMCI inmates and Knudsen over a 12-month period. (*Id.*, ¶ 21.) Based on this information and the information uncovered during his investigation of the mail, Wiltzius issued a conduct report charging Brown with several DOC code violations: Possession of Intoxicants (DOC 303.43), Enterprise and Fraud (DOC 303.36(A)), Possession or Use of Money or Negotiable Instruments (DOC 303.42), and Unauthorized Use of the Mail (DOC 303.49). (*Id.*, ¶ 23.)

It is undisputed that non-defendant Security Director Thomas Campbell approved the conduct report and designated the charges as "Major Offenses." (ECF No. 34, ¶ 24.) On March 6, 2024, CO Doying delivered a copy of the conduct report to Brown along with a "Notice of Major Disciplinary Hearing Rights and Waiver of

4

Contested Major Hearing and Waiver of Time" form, which detailed Brown's due process rights. (*Id.*, ¶¶ 26-27.) Using this form, Brown chose to proceed with a contested major disciplinary hearing. (*Id.*, ¶ 28.)

The hearing was held on March 8, 2024, before a committee composed of Puterbaugh and Doying. (ECF No. 34, ¶¶ 30-31.) Puterbaugh was the Hearing Officer. (*Id.*, ¶ 32.) The defendants assert that neither Puterbaugh nor Doying had a conflict of interest that would prevent them from serving as impartial decision makers. (*Id.*, ¶¶ 33-34.) Brown asserts that Puterbaugh was not impartial because he was Wiltzius's subordinate, and he was involved in the issuance of the conduct report. (ECF No. 44 at 5.) As evidence for this, Brown points to Puterbaugh's declaration, which states "In this case, no substitution was necessary because I was involved in the incidents giving rise to the issue of Conduct Report # 371539." (ECF No. 46-1 at 22, ¶ 11.)

Brown was present at the hearing with his staff representative. (ECF No. 34, ¶ 35.) Wiltzius appeared as a witness. (*Id.*) The conduct report was read aloud and Brown was questioned regarding the incident. (*Id.*, ¶¶ 36-38.) Brown was also allowed to make a statement and question Wiltzius. (*Id.* ¶¶ 36-40.) Puterbaugh and Doying reviewed the testimony, the conduct report, and the evidence supporting the conduct report and "unanimously found it more likely than not that Brown" committed the infractions. (*Id.*, ¶ 41.) Brown was given 90 days in disciplinary segregation. (*Id.*, ¶ 44.) Brown appealed the disposition, but non-defendant Warden Joy Tassler upheld the decision finding the disposition appropriate. (*Id.*, ¶¶ 45-47.)

5

Brown asserts that he did not receive proper due process because Wiltzius falsified information in the conduct report including the date Brown went to the mail room; when Brown was placed on TLU; and when the mail was tested for illegal substances. (ECF No. 44 at 7.) Brown also asserts that he did not receive full due process because the committee did not reach a unanimous decision regarding his guilt, which is required when the decision is made by committee in a disciplinary hearing. (ECF No. 46 at 5.) As evidence of this, Brown points to a portion of Doying's declaration wherein she states, "I was not involved in the decision-making process as it relates to Brown's guilt or innocence of the charges made against him in Conduct Report No. 371539." (ECF No. 36, ¶ 23.) The defendants assert that Brown is misreading Wis. Admin. Code § DOC 303.08(d), which does allow for the hearing officer alone to make a determination of guilt or innocence. (ECF No. 48 at 5.)

Once in segregation, Brown states he "spent 55 days in segregation where the condition was significantly harsher than those in the normal prison environment." (ECF NO. 46 at 3.) He states that he was "locked down for 24 hours a day for violations he did not commit." (*Id.*) The toilet would only properly flush if flushed once during a five-minute period, and "for more than a week, the Plaintiff was made to have a cellmate and smell his feces, sometimes for over half a day, while also being made to use the toilet without any privacy." (*Id.*)

**SUMMARY JUDGMENT STANDARD**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6

matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Brown claims that Wiltzius violated his constitutional rights when he opened Brown's legal mail outside Brown's presence. He claims Puterbaugh and Doying

7

violated his constitutional rights by not affording him proper due process before placing him in segregation.

*Access to Courts Claim*

The right of access to courts is grounded in multiple constitutional provisions and includes the right to keep legal mail private. *Christopher v. Harbury,* 536 U.S. 403, 415 n. 12 (2002); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 802-03 (7th Cir. 2010). "Given the importance of confidential communication between lawyer and client in formulating litigation strategy, destroying that confidentiality infringes on the right of access to the courts." *Sovereignty Joeseph Helmueller v. Wilson*, Case No. 23-1962, 2023 WL 8274582 at * 1 (7th Cir. Nov. 30, 2023). However, not every envelope labeled "legal mail" is actually legal mail, so prison officials "must be permitted to verify the nature of the communication." *Id.* Typically, this is done by having the prisoner present when the prison official opens the mail. *Id.*

Here, however, Brown asserts that Wiltzius opened the mail without him present. Wiltzius asserts he opened the mail with Brown present. While this is a question of fact, it is immaterial because even when taking the facts in a light most favorable to Brown—that Wiltzius opened the mail without Brown present—no reasonable factfinder could conclude that Brown's constitutional right to access to courts was violated.

Wiltzius asserts he verified that the letter was not in fact legal mail prior to opening it by investigating whether the law firm existed and determining it did not. Brown questions the veracity of Wiltzius's assertions, stating he relied only on his

8

own words, but he offers no evidence that Wiltzius lied about researching the law firm. And, Wiltzius submitted a sworn declaration supporting these assertions.

Additionally, Brown has provided no evidence that Fox Law, LLC is in fact a law firm in Petosky, Michigan or that he retained a lawyer from that firm. *See Guajardo-Palma*, 622 F.3d at 806 (noting that protected mail is from a lawyer who represents the prisoner and contains materials that would offer insights into a prisoner's legal strategy or interfere with confidentiality.) Instead, based on his statements at his disciplinary hearing, it appears that the mail at issue was actually sent to Knudsen, his girlfriend, who would often edit his legal briefs and then send them back. When sending them back, Brown instructed her to mark the envelopes as if from a law firm so they would not undergo screening.

Brown also has not demonstrated that he suffered any harm from Wiltzius opening the mail. The contents of the mail was a draft of a supervisory writ. There was no cover letter or any other type of communication included that contained legal advice or litigation strategy. Opening legal mail outside the prisoner's presence "is subject to harmless-error analysis." *Guajardo-Palma*, 622 F.3d at 806. Brown must offer proof that Wiltzius's actions "hindered him in his pursuit of any legal matter." *Sovereignty*, 2023 WL 8274582 at * 2. At most, Brown states that because Wiltzius destroyed the draft without making a copy, he no longer had access to the draft. But he does not explain how that negatively impacted his legal pursuits, such as causing him to miss a deadline or lose a motion. "Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that

9

would convince a trier of fact to accept its version of the events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). "It is therefore incumbent on the party opposing a summary judgment motion to 'inform the district court of the reasons why summary judgment should not be entered'" *Reed v. Brex, Inc.*, 8 F. 4th. 569, 578 (7th Cir. 2021) (quoting *Riely v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018)).

Because no reasonable factfinder could conclude that Brown's mail was from a lawyer he retained to represent him or that he suffered harm from Wiltzius opening his mail, summary judgment is granted in Wiltzius's favor.

*Due Process Claim*

"A prisoner challenging the process he was afforded in a prison disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994)). Placement in segregation may create a liberty interest "if the length of segregated confinement is substantial and the record reveals the conditions of confinement are unusually harsh." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009).

Brown asserts that he spent 55 days in segregation where there were significantly harsh conditions. The length is insufficient to establish a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995) (short-term placements in segregation do not trigger liberty interest); *Townsend v. Fuchs*, 522 765, 766 (7th Cir.

10

2008) (two months in segregation does not deprive an inmate of a liberty interest); *Beamon v. Pollard*, 711 Fed. Appx. 794, 795 (7th Cir. 2018) (135 days does not deprive an inmate of a liberty interest). The only condition he describes that could remotely be considered harsh is that the toilets did not properly flush if flushed more than once during a five-minute period. While inconvenient, such an issue is not unusually harsh.

Because Brown does not demonstrate he had a liberty interest, the court need not consider whether the process he received—namely whether he had an impartial decision maker—was constitutionally deficient. Summary judgment is granted in Puterbaugh's and Doying's favor.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. The defendants also argued that they were entitled to qualified immunity but because the court decided the case in their favor on the merits, it does not have to address that argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 32) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

11

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 17th day of June, 2026.

STEPHEN DRIES
United States Magistrate Judge

12